

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOSEPH MCCORMICK, | § | No. 08-18-00073-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 143rd District Court |
| THE STATE OF TEXAS, | § | of Reeves County, Texas |
| Appellee. | § | |
| | § | (TC# 17-01-08135-CRR) |

## <u>O P I N I O N</u>

A jury convicted Appellant Joseph McCormick of continuous sexual assault of a child under the age of fourteen, a first-degree felony offense. TEX PENAL CODE ANN. §§ 21.02(a)–(c)(2, 4), (h), 22.011(c). The trial court sentenced Appellant to confinement for sixty years. This appeal followed.

## FACTUAL BACKGROUND

A.A., the child victim in this case, is Appellant's stepdaughter. A.A. first met Appellant when she was five years old and was later adopted by him.

### *The Child's Testimony*

Appellant's last alleged incident of sexual abuse occurred one or two nights before Appellant made her outcry on November 22, 2015. Appellant tried to touch A.A., but she began

rolling around and pretended to be asleep. Appellant touched A.A.'s female parts under her clothes and put his fingers inside her. A.A. testified this had happened before—continuously and almost daily—beginning when she turned eleven. Shortly before A.A.'s twelfth birthday on May 29, 2015, at around 1:00 or 2:00 a.m., Appellant picked her up, turned her sideways, put his male sexual organ in her female part for about two to three minutes, and told her to be quiet. After she turned twelve, Appellant made her touch "his male part."

On November 22, 2015, A.A. began screaming at her younger sister "about what had been going on[.]" After learning about the sexual abuse, A.A.'s sister told their mother. A.A. had not reported her sexual abuse to any adult before her sister told their mother. A.A. told her mother Appellant "had been sexually assaulting" her. A.A.'s mother then asked her to write a statement; A.A. handwrote, signed, and dated a statement on November 22, 2015. A.M. asked A.A. if her allegations were true and then called Heather McGhee, a close friend and doctor. The following day, A.A. met McGhee in her office and spoke with her about Appellant's repeated sexual abuse. McGhee did not examine A.A. but asked whether she had been touched inappropriately. A.A. confirmed the sexual abuse.

### The Allegations Reported to Law Enforcement

On November 23, 2015, a report of sexual abuse of a child was made and Sergeant Jose Angel Gonzalez of the Reeves County Sheriff's Office was assigned to the case. That day, Sergeant Gonzalez spoke with twelve-year old A.A. and her mother. Sergeant Gonzalez confirmed Appellant was 27 years old at the time. His investigation documented A.A. made her outcry on November 22, 2015, first to her younger sister, who was less than eighteen years' old, and then to her mother. Sergeant Gonzalez asked A.A. if she told her mother the truth, which A.A. confirmed.

### The Child's Written Statement

2

A.A.'s written statement was admitted at trial as State's Exhibit 2 over Appellant's hearsay objection. A.A.'s statement reads as follows:

> It started when I was 11 years old. He started with my upper parts of my body. Then he started with the bottom part of my body. Then he started with all my body parts. After awhile he started sticking his finger up me. He has done this for awhile [sic]. One day it was just me and him alone at the house. My mom and brother and sister where [sic] not home. I just came inside and he told me to go in my room. He took off my pants and underwear. I told him not to[.] I told him don't. He did not listen. He told me to go to sleep. When I pretended to be asleep he stuck his penus [sic] up me. I did not know what to do. I was scared to tell. Then my mom told me a story about this girl that got pregnat [sic] by her stepfather so I did not know what to say. Then I turned 12 years old and it [sic] was still doing it to me. He would go in my room at night and stick his finger up me. He would do it to me maybey [sic] a week every month in a role [sic]. I thought he would stop. Be he would not[,] he kept doing it to me. I did not want to tell know [sic] one about it. I was scare[d]. Then one night he went in my room again and this time he picked me up and turned sideways and stuck his penus [sic] up in me again. I was scared that he would get me pregnat [sic]. I was scared to tell because I did not want to ruin the relationship with my mom and stepfather. He kept going in my room almost every night. I would pretend to sleep and I would fight against it. Then I finally want [sic] to make it stop. I did not want to do it anymore. He would make me touch his penus [sic] when I pretend to be asleep. I had to much[,] I couldn't take it. Then my sister told my mom and I told her everything. I was so scared that he was going to do the same thing to my brother and sister. I don't want him to hurt me anymore. So that [sic] what happened to me.

### The Recorded Forensic Interview

An interview for A.A. was scheduled at Harmony Home, a child advocacy center. Shirley Del Campo, a forensic interviewer at Harmony Home, interviewed A.A. on November 24, 2015. Del Campo testified A.A. did not contradict or recant her allegations of sexual abuse. Under cross-examination, Del Campo clarified A.A. stated the last act of sexual abuse occurred in her bedroom on the Friday—rather than the Saturday—before her outcry. A.A. said Appellant penetrated her female organ with his male organ twice, but Del Campo did not recall A.A. making any reference to acts of sexual abuse occurring in the parent's room, the living room, the barn, or the car.

Sergeant Gonzalez observed the forensic interview through a video monitor and took

custody of the recorded interview. The recording, which was admitted into evidence over Appellant's objection, was published to the jury in two formats as State's Exhibits 3 and 4.

During the recorded interview, A.A. stated Appellant touched her private parts, pointing to her breast and groin areas. A.A. was given a drawing of the front and back of a naked child and was asked to mark where Appellant touched her. A.A. circled the breast, genital, and buttocks areas. The drawing was admitted into evidence and A.A. referred to it throughout the forensic interview. A.A. explained Appellant would squeeze the marked areas and would place his finger inside her, as she pointed to the genital area of the child in the drawing. A.A. stated Appellant last touched her "this past Friday" while everyone was asleep. A.A. described that while wearing only his underwear, Appellant went to her shared bedroom and stood at the side of her bed. He tried to touch her "in all of those places" and touched her under her clothes in the marked areas of the drawing, placing his fingers "up in [her] . . . where the boy's parts go," and made her touch him. A.A attempted to "fight" Appellant and tried to get him to stop by pretending to be asleep and tossing and turning. When Appellant finished, he went to the bathroom, washed his hands, and returned to his room.

A.A. explained "he's done that before a lot"—almost daily—beginning when she was eleven, but she was too scared to tell anyone. The first episode A.A. remembered—Appellant stuck his hand up her shirt and "squeeze[d] them" then touched her genital area beneath her clothing. During the commission of the sexual assault over the years, if A.A.'s mother or anyone else walked in, Appellant would pretend he was rubbing A.A.'s belly, but when Appellant touched A.A., they were generally either alone, or everyone was asleep.

A.A. recalled the previous year Appellant took her to her room and told A.A. to go to sleep. A.A. closed her eyes but did not sleep. Appellant took off her pants and underwear, slightly pulled

4

down his pants and underwear, then "stuck his thingy"—"the boy's private part"—in her genital area. Appellant's body was "going back and forth." A.A. told him to stop, but he would not. Appellant did this a second time after her birthday in May 2015. While A.A. was asleep in her room, Appellant picked her up, turned her sideways, pulled down her shorts and underwear, and stuck his "thingy" in her while he stood on the side of the bed and moved his body back and forth. When he finished, Appellant turned A.A. back to her previous position and covered her up.

A.A. had seen Appellant's "thingy" many times because he would grab her hand and make her touch it. Appellant did this a lot—almost every time he went into A.A.'s bedroom, and she would yank her hand back to make him stop. Although A.A. would toss and turn to stop Appellant from touching her, he would not stop—he "kept trying and trying." A.A. decided to come forward because she "was getting 'scareder and scareder' [sic] every time he came into [her] room," and was "really uncomfortable with it." She tried to tell her sister, but A.A.'s sister thought she was lying and would tell her "it was just a dream." A.A. declared it was not a dream and explained Appellant would whisper in her ear, telling her to open her legs. A.A. never told anyone other than her sister. When A.A. and her sister argued over it one day, their mother learned of the abuse.

### The Child's Therapist

Miriam Jansky was A.A.'s therapist for two years after her outcry. At trial, Jansky testified to A.A.'s outcry. Without objection, Jansky explained A.A. exhibited maladaptive coping skills, including guilt, shame, sadness, nightmares, inability to sleep, and adoption of protective behavior, such as wearing tight pants for bed—a practice A.A. developed "to keep [Appellant] away" and continued to use due to a traumatic need to protect herself. These maladaptive coping skills, Jansky explained, are consistent with child sexual abuse. According to Jansky, A.A. never recanted the sexual abuse. Jansky explained it is not uncommon for a child's recollection of events to fluctuate

between initial interviews and court testimony. She clarified a child's inability to correctly remember dates and details does not negate the occurrence of the abuse. When considering a child's recantation of allegations, Jansky outlined the importance of knowing whether the recantation was made to someone with a vested interest, such as a parent or a close family friend, as opposed to a teacher or someone perceived as helpful, but with no vested interest.

### *The Sexual Assault Forensic Examination*

Cori Armstead was the sexual assault nurse examiner ("SANE") who examined A.A. She was qualified as an expert witness and described a sexual assault forensic exam (SAFE), which includes an evaluation of a patient's history and a physical exam.

### A. History Portion of the SAFE

Armstead asked A.A. to tell her what happened and included A.A.'s responses in the SAFE record. A.A. told Armstead Appellant first touched her when she was eleven. A.A. stated she told her sister about Appellant's acts, but her sister did not believe her. A.A. eventually told her mother. In response to Armstead's questions, A.A. stated Appellant used his hand to touch her breasts, buttocks, and female sexual organ, and would grab her hand and make her touch his "thing." A.A. explained she was afraid to go to sleep because Appellant might put his "thing" in her bottom, which hurt and made her feel "weird." When A.A. was eleven years old, Appellant and A.A. were home alone and Appellant took her pants off and stuck his "private" in her "private." A.A. told Armstead this hurt her. Appellant attempted to touch A.A. every week while her mother was asleep, and A.A. would try to stop him by tossing and turning or pretending to be asleep.

### B. Physical Examination Portion of the SAFE

During the examination, Armstead detected A.A.'s hymen had been ripped or torn to the vaginal wall in two locations. Photographs of the interior of A.A.'s vagina was admitted into

6

evidence, which Armstead referred to during her testimony. The photographs showed A.A.'s two separate, but healed hymenal injuries. Armstead testified she documented her conclusions from the exam and concluded A.A.'s injuries were consistent with repeated sexual assault "as per the patient's history[.]" Armstead explained not only did she find the two hymenal transections, but also thinning of A.A.'s hymen, which is common from repeated penetration. Armstead did not find any trauma to A.A.'s anus, posterior fourchette, or the labia major or minor. Under cross-examination, Armstead agreed she could not determine when the injuries occurred or the manner of infliction, but she explained A.A.'s injuries were caused by penetration.

### *Defense Witnesses*

#### 1. Nurse Practitioner Heather McGee

Heather McGhee, a family nurse practitioner, met with A.A. and her mother in November 2015. According to McGhee, A.A. was "extraordinarily angry," would not communicate with her, and made threats. McGhee testified A.A. answered "no" when asked whether she had been touched inappropriately. Under cross-examination, McGhee admitted she knew A.A.'s mother and Appellant for approximately three years and had participated in rodeos and horseback riding activities with them. McGhee and her son—who was fifteen years old at the time of trial and knew A.A. from school—had visited the McCormicks at their home. After meeting with A.A. at the clinic, McGhee contacted child protective services.

#### 2. T.M.—A Family Friend

T.M. was A.A.'s school friend. T.M. described herself as a "really close" friend of A.A. and claimed she did not notice inappropriate behavior during her visits to A.A.'s house. T.M. agreed that on or about February 15, 2016, A.A. told her during an online conversation that she lied about Appellant because she was angry and upset. Under cross-examination, T.M. claimed

7

she was very good friends with the McCormicks. T.M. did not save the February 15 conversation and testified she would be surprised if A.A. acknowledged her recantation.

### 3. A.A.'s Mother

A.A.'s mother, A.M., testified her younger daughter informed her on November 22, 2015, about the sexual abuse. A.M. called A.A. into the house and spoke with her. A.A. was upset and "sobbed" as she informed A.M. that Appellant had touched her. Initially, A.A. only told A.M. about the touching and did not mention penetration or when the abuse began. A.A. did not disclose to her mother penetration had occurred "until . . . more of all of this started happening." A.M. then "did the whole mom thing" and called Appellant, threatened him, and told him not to come home.

A.M. identified State's Exhibit 2—A.A.'s written statement—as the document she had A.A. write at home. A.M. declared the written statement contained all the sexual abuse accusations A.A. disclosed to her that day. A.M. claimed Appellant typically went to sleep between 9:30 and 10:00 p.m., and she would go to sleep at 10:00 or 11:00 p.m. She described the mattress of their shared bed as springy and noisy and claimed she was a light sleeper. A.M. specified the only time Appellant got up in the middle of the night was to adjust the thermostat. She testified she was aware when Appellant did this and claimed Appellant would immediately return to bed. The morning after A.A.'s outcry, A.M. took A.A. to a clinic to see McGhee. McGhee was the second adult A.A. spoke to. Later that evening, a sheriff's officer asked A.M. to bring A.A. to the station. While there, A.M. disclosed A.A. had written a statement and the sheriff's department took personnel possession of the statement. That evening, A.A. told A.M. she did not know "it would go this far" and "just wanted [Appellant] to move out." A.M. stated she interpreted A.A.'s statement as indicating nothing had happened but agreed A.A.'s statements also could be interpreted as A.A. indicating she simply wanted "it" to be over, had regretted saying anything,

8

and had wanted to "call all this off." The following day, November 24, 2015, A.A. was interviewed at Harmony House in Odessa, followed by a forensic examination in Midland.

A.M. testified there were times Appellant was alone with A.A. in a vehicle, the barn, the animal pens on the McCormick property, and other locations in Reeves County. On the night A.M. told Appellant he could not come home, Appellant slept in his truck. A.M. acknowledged Appellant began living in their recreational vehicle located on the six-acre family property. A.A. continued living in the home until child protective services forcefully removed her in December 2015. On re-direct, A.M. could not recall whether A.A. reported multiple incidents of penetration.

#### 4. Y.M.—A.A.'s sister

Y.M., A.A.'s sister, was twelve years old at the time of trial. Y.M. testified she is a light sleeper and shared a bedroom with A.A. She testified she could hear the springs of her parent's bed, which would wake her when they would get in and out of bed. Y.M. testified she never saw Appellant in the bedroom at night. According to Y.M., A.A. tried to convince her Appellant had also touched her, but Y.M. refused and maintained Appellant had never been inappropriate with her.

### DISCUSSION

In twenty-three issues, Appellant challenges his conviction. Appellant asserts legal insufficiency, trial court error, and abuse of discretion relating to the admission of evidence, charge error, and improper closing argument. In his final issues, Appellant challenges the charged offense on constitutional grounds, and argues the cumulative effect of all hearsay evidence and the cumulative effect of all the errors require reversal. We affirm.

### I. Legal Sufficiency

In his first issue, Appellant claims the evidence is legally insufficient to support his

conviction beyond a reasonable doubt. Appellant asserts A.A. provided "four different stories" describing varied patterns of alleged abuse, which is contradicted by the testimony provided at trial.

### *Standard of Review*

Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The critical inquiry in a legal sufficiency challenge is whether the evidence in the record could reasonably support a conviction of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

When reviewing the legal sufficiency of the evidence, we must view all the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(*citing Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

We bear in mind the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014)

10

(*citing Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

### *Applicable Law*

Guilt of the offense of continuous sexual abuse of a child will be found if (1) a person, (2) who is seventeen years or older, (3) commits a series of two or more acts of sexual abuse, (4) during a period of thirty or more days, and (5) each time the victim was younger than fourteen years old. TEX.PENAL CODE ANN. § 21.02(b)–(d); *Casey v. State*, 349 S.W.3d 825, 829 (Tex.App.—El Paso 2011, pet. ref'd). Regarding the alleged acts, the Court of Criminal Appeals has explained:

> The statutory language reflects that the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration.

*Price v. State*, 434 S.W.3d 601, 605–06 (Tex.Crim.App. 2014).

> Here, the indictment alleged:

> [D]uring a period that was 30 days or more in duration, to wit: from on or about June 1, 2014 through on or about November 20, 2015, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely, indecency with a child by touching the genitals of AA, a pseudonym, and by aggravated sexual assault by causing the penetration of the sexual organ of AA, a pseudonym, by the sexual organ of Defendant[.]

The indictment alleged incidents of indecency with a child and aggravated sexual assault as the underlying "act of sexual abuse" for the offense of continuous sexual abuse of a child.

11

TEX.PENAL CODE ANN. § 21.02(c)(2), (4). A person commits the offense of indecency with a child by sexual contact if the person engages in sexual contact with a child younger than seventeen years of age. *Id.* § 21.11(a)(1). Regarding the underlying offense of indecency with a child, the term "sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. *Id.* §§ 21.01(2), 21.02(c)(2) (restricting the underlying act of indecency under Section 21.02(c)(2) to those the actor committed in a manner other than by touching, including touching through clothing, the breast of a child). A person commits aggravated sexual assault when he intentionally, or knowingly causes the penetration of the anus or sexual organ of a child by any means and the victim is younger than fourteen years of age, regardless of whether the person knows the age of the victim at the time of the offense. *Id.* § 22.021(a)(1)(B), (a)(2)(B).

Thus, under a hypothetically correct jury charge, the State was required to prove, beyond a reasonable doubt, that Appellant, while seventeen years of age or older, committed two or more acts of sexual abuse against A.A., a child younger than fourteen years of age, either by indecency with a child by touching A.A.'s genitals, or aggravated sexual assault by the penetration of the sexual organ of A.A. by the sexual organ of Appellant, or both, during a period that is more than thirty days in duration. TEX.PENAL CODE ANN. § 21.02(b)–(c).

### *Analysis*

Appellant complains of contradictions in A.A.'s evidence, according to him, amount to legal insufficiency. He first asserts, in A.A.'s recorded forensic interview with Del Campo at Harmony Home, A.A. circled the "butt" area on the drawing but did not mention this body part in her statement to her mother. Appellant points out that during the recorded forensic interview, A.A. alleged Appellant made her touch his penis many times, would put his hand up her shirt and

squeeze "them[,]" and Appellant would pretend to rub her belly if someone walked in while he was touching her, but none of these assertions were included in A.A.'s written statement. He also complains A.A.'s terminology describing Appellant's male sexual organ in her written statement—"penus"—differs from the terminology used during her recorded forensic interview—"private parts" and "thingy"—and A.A.'s supposed indication to Del Campo she did not know the terminology for that part of the male anatomy.

Appellant asserts A.A.'s testimony at trial differs from her written statement—Appellant penetrated her with his sexual organ on a single occasion before her twelfth birthday, penetrated her vagina with his finger, and no other type of sexual abuse had occurred—was contrary to what she alleged in her written statement and to Armstead during the SAFE. He complains A.A. first disclosed at trial, and not before, Appellant sexually abused her in his bedroom, the barn, and the car. Appellant further claims A.A. was unaware of a specific attribute on his penis that related to a medical condition, and it follows "[i]f Appellant had really assaulted A.A., surely [she] would have known of this deformity[.] Finally, Appellant contends A.A.'s declarations to McGhee and T.M. of "no sexual abuse" and that she "had lied" along with "other serious deficiencies" rendered the evidence legally insufficient. We disagree.

Appellant first abused A.A. when she was eleven years old. She believed Appellant was "[i]n his 30s" at that time. Appellant's last act of sexual abuse upon A.A. occurred one or two nights before her outcry to her mother. Appellant entered the sisters' bedroom and attempted to touch A.A., but she began rolling around and pretended to be asleep. A.A. testified for the next five minutes, Appellant touched A.A.'s female parts under her clothes where she uses the restroom and put his finger inside her. A.A. testified this had happened before—continuously and almost daily—since she had turned eleven years old. A.A. further testified that one week or so before her

13

twelfth birthday, at around 1:00 a.m. or 2:00 a.m., Appellant picked her up, turned her sideways, and put his male sexual organ in her female sexual organ for about two to three minutes. After A.A. turned twelve, Appellant entered A.A.'s room and made her touch "his male part."

On November 22, 2015, A.A. revealed to her mother Appellant had been sexually abusing her. That same day, A.A. prepared a written statement detailing the sexual abuse at the request of her mother. At trial, after refreshing her memory with her written outcry statement, A.A. admitted there were some things in her statement she did not remember. A.A. acknowledged under cross-examination, during her forensic interview at Harmony House, she may have reported Appellant had twice placed his sexual organ in her sexual organ. She also admitted in her November 22, 2015, written statement, she stated Appellant had twice placed his "penus" in her—once when she was eleven and again after she turned twelve. A.A. confirmed Appellant was over the age of seventeen when he committed these acts. Over Appellant's objections, A.A.'s written statement and recorded forensic interview were admitted into evidence, and the recorded forensic interview was published to the jury.

The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX.CODE CRIM.PROC.ANN. art. 38.07(a). Our duty is to ensure that the evidence presented supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex.Crim.App. 2012). When the record supports contradicting inferences, as is the case here, we presume the jury resolved those conflicts in favor of the verdict. *Id.* At trial, A.A. testified Appellant "would go into our room, and . . . would hurt me, but I would make sure he wouldn't hurt [my sister.]" A.A. testified in detail to the continuous sexual abuse and the jury was free to believe or disbelieve her testimony. *Dobbs*, 434 S.W.3d at 170. During the investigation, A.A. spoke to law enforcement, medical personnel, child protective services personnel, and others about

Appellant's acts, many of whom testified on behalf of the State.

A.A.'s testimony, her written statement, her recorded forensic interview, the testimony of the State's witnesses, coupled with other evidence in the record, establishes Appellant, while over the age of seventeen, committed acts of sexual contact upon A.A. while she was eleven and twelve years old, including one or more acts of indecency with a child and one or more acts of aggravated sexual assault of a child, during a period that spanned more than thirty days. We defer to the jury's determinations on the credibility of witnesses and the weight given to their testimony, as we are required to do, and based on the cumulative force of all the evidence when viewed in the light most favorable to the verdict, we conclude a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Issue One is overruled.

## II.     Evidentiary Challenges

In most of his remaining issues, Appellant challenges the trial court's evidentiary rulings.[1]

### *Standard of Review*

We review the trial court's decision to admit or exclude evidence—as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice—under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex.Crim.App. 2018). "A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement." *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex.Crim.App. 2016). We may not substitute our decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). Reversal is required when we "find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley*, 493 S.W.3d at 83. We will uphold an evidentiary ruling if it is correct on any theory of law applicable

---

[1] We set forth only once the applicable standards of review and law governing the admission of hearsay evidence and preservation of error, and refer to them, when necessary, in our analysis of each of Appellant's issues.

15

to the case. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex.Crim.App. 2006).

Evidentiary errors generally constitute non-constitutional error which we review under Rule 44.2(b). TEX.R.APP.P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373. We disregard non-constitutional errors that do not affect a criminal defendant's "substantial rights." TEX.R.APP.P. 44.2(b); *Casey v. State*, 215 S.W.3d 870, 884-85 (Tex.Crim.App. 2007). An error does not affect a substantial right if, after examining the entire record, we have a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Casey*, 215 S.W.3d at 885. In making this determination, we consider: (1) the character of the alleged error and how it might be connected to other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *Gonzalez*, 544 S.W.3d at 373. When the trial court overrules an evidentiary objection, any error in the ruling is harmless and is not reversible when the same evidence has been admitted elsewhere without objection. *Leday v. State*, 983 S.W.2d 713, 717–18 (Tex.Crim.App. 1998).

### *Applicable Law*

1. Preservation of Error

Rule 33.1 of the Texas Rules of Appellate Procedure governs error preservation and provides that, to preserve error, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" TEX.R.APP.P. 33.1(a)(1)(A). Although no "hyper-technical or formalistic use of words or phrases" is required to preserve error, the complaining party must notify the trial judge about what he wants, why he thinks he is entitled to

it, and must do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it. *Golliday v. State*, 560 S.W.3d 664, 670 (Tex.Crim.App. 2018)[Internal quotations omitted]. The record must show the trial court ruled on the party's request, objection, or motion, either expressly or implicitly, or refused to rule and that the complaining party objected to the trial court's refusal. TEX.R.APP.P. 33.1(a)(2). To preserve error in admitting evidence, a party must object each time the alleged inadmissible evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003). An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Id.* The requirement of error preservation "generally applies to all complaints except those that involve rules that are 'waivable only' or 'systematic' (or 'absolute') requirements." *London v. State*, 490 S.W.3d 503, 507 (Tex.Crim.App. 2016). "[A]ll other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez*, 138 S.W.3d at 342.

The Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano*, 70 S.W.3d at 889. An appellant must have made a proper and specific objection at the time the evidence was offered or excluded to preserve his right of review of that evidentiary claim. *Moff v. State*, 131 S.W.3d 485, 489 (Tex.Crim.App. 2004). The point of error on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012); *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App. 1986).

2. Outcry Statements

The Legislature enacted Article 38.072, the "outcry statute," to address the trauma that child victims of sexual or physical abuse may experience when testifying about their abuse.

TEX.CODE CRIM.PROC.ANN. art. 38.072; *Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex.Crim.App. 2005). Article 38.072 permits the testimony of the outcry witness, the first adult who is eighteen years of age or older—other than the defendant—to whom the child made a statement describing the alleged offense. TEX.CODE CRIM.PROC.ANN. art. 38.072, §§ 2(a),(b); *Martinez*, 178 S.W.3d at 811 n.15. Essentially, Article 38.072 serves as a statutory hearsay exception and allows hearsay evidence of a complainant when a defendant has been charged with certain offenses—including sexual offenses—against a child under the age of fourteen. TEX.CODE CRIM.PROC.ANN. art. 38.072, §§ 1, 2; *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex.Crim.App. 2011).

Under this provision, the child's out-of-court statement—an "outcry"—is admissible if it is a description of the offense and is offered by the first person over the age of eighteen to whom the child disclosed the offense—the "outcry witness." *Sanchez*, 354 S.W.3d at 484. Under Article 38.072, the child must have described the alleged offense in some discernable manner and must give more than "a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App. 1990). Outcry statements from multiple witnesses may be admissible under the statute if each witness testifies about different incidents of abuse. *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex.Crim.App. 2011). Evidence admitted under Article 38.072 is restricted to the live testimony of a properly designated outcry witness and does not include a complainant's video-recorded statement.[2] *Bays v. State*, 396 S.W.3d 580, 581, 586–88, 592 (Tex.Crim.App. 2013)(observing that the Court has repeatedly described the form of outcry evidence to be testimony from a witness and holding that the Legislature did not intend the

---

[2] Article 38.071, the "video statute" governs the admissibility of a child-victim's pretrial recorded statements and creates a hearsay exception for the pretrial video or audio recorded statements of a child, subject to stringent requirements. TEX.CODE CRIM.PROC.ANN. art. 38.071; *Bays*, 396 S.W.3d at 588–89.

18

admission of video recordings under the statute). The use of such statements is limited, and the child must testify at trial or be available to testify. TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(3); *Martinez*, 178 S.W.3d at 811.

To admit evidence under Article 38.072, the State must notify the defendant of its intent to call an outcry witness, identify the witness, and provide a summary of the outcry statement. TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(1). The trial court must then conduct a hearing outside the presence of the jury and determine whether the complainant's out-of-court statement is reliable based on the time, content, and circumstances[3] of the statement, and the complainant must either testify or be available to testify at the proceeding. *Id.* at § 2(b)(2–3).

### *Relevant Portion of the Record*

The State provided Appellant notice of its intent to admit A.A.'s verbal outcry statement and handwritten statement. Appellant filed a written pretrial objection arguing Shirley Del Campo of Harmony Home was not the first person over the age of eighteen to whom A.A. made an outcry statement and objected to the application of Article 38.072. Appellant sought restriction of the application of Article 38.072 to the initial verbal statements A.A. made to her mother during the initial outcry but had no objections to the State's intent to use statements A.A. made to Sergeant Gonzalez.

During a pretrial hearing, Appellant reiterated his written objection. The State argued A.M. was the first person over eighteen to whom A.A. made a claim of sexual abuse and agreed when multiple outcry statements are made, a more substantive statement of outcry controls over less specific outcry allegations. The State also argued A.A.'s written outcry statement was an

---

[3] "The phrase 'time, content, and circumstances' refers to the time the child makes the statement to the proffered outcry witness, the content of the statement, and the circumstances surrounding the making of the statement." *Carty v. State*, 178 S.W.3d 297, 306 (Tex.App.—Houston [1st Dist.] 2005, pet. ref'd). The issue is whether the child's outcry statement is reliable, not whether the outcry witness is credible. *Sanchez*, 354 S.W.3d at 487–88.

immediate continuation of her verbal outcry to her mother, which she prepared within the same "time frame" of her verbal outcry. The State argued A.A.'s written statement was the best evidence because she fully described the specific acts of sexual abuse she disclosed to her mother.

In a hearing outside the presence of the jury, Appellant agreed A.A.'s written outcry statement was prepared contemporaneously with her oral outcry to her mother and declared, "So we don't object as much to the written statement being included with the Code of Criminal Procedure section; however, anything said to Shirley Del Campo, we strenuously object to the hearsay exception provided by 38.072." The trial court sustained Appellant's objection to Del Campo being offered as an expert outcry witness under Article 38.072. Appellant did not secure a ruling on his objection to the State's intended use of A.A.'s written statement.

At trial, A.A. testified she first told her mother, who is over the age of eighteen, that Appellant had "sexually assault[ed]" her and, at her mother's request, prepared a written statement describing Appellant's acts of sexual abuse. A.A. identified her written statement, which was designated as State's Exhibit 2. A.M. testified as a defense witness, and the State did not call her as the sponsoring witness of A.A.'s outcry and written statements. The State sought to admit A.A.'s written outcry statement through Sergeant Gonzalez, the officer whom A.M. provided A.A.'s written statement to. Appellant objected to the admission of the written outcry statement on grounds of hearsay "not subject to any exception, including the [statutory] outcry exception provided by the Code of Criminal Procedure." However, contrary to his initial pretrial concession the written outcry statement was contemporaneous with A.A.'s verbal outcry to her mother, Appellant argued any writing produced after the verbal outcry did not fall within a hearsay exception. Appellant did not object to the admission of A.A.'s written statement on the basis the trial court did not conduct an Article 38.072 hearing outside the presence of the jury.

20

The State countered oral, written, and recorded outcry statements are admissible and A.A.'s outcry statement collectively consisted of both her oral and contemporaneous written statements. The trial court overruled Appellant's objection and admitted A.A.'s written statement.

**Issues Two and Four: Article 38.072 Outcry Reliability Hearing and Admissibility of A.A.'s Written Statement as Qualified Outcry Statement**

In his second issue, Appellant asserts the trial court abused its discretion by admitting A.A.'s videotaped forensic interview at Harmony House and A.A.'s written statement as outcry evidence because the trial court failed to comply with Article 38.072. TEX.CODE CRIM.PROC.ANN. art. 38.072(b)(2). Although we agree with the State Appellant's second issue is multifarious, Appellant has abandoned his complaint the trial court erred by admitting the recorded forensic interview. Thus, our analysis is restricted to the alleged erroneous admission of A.A.'s written statement.

Appellant argues the trial court erred in failing to conduct a hearing when it considered whether A.A.'s outcry statement was reliable in accordance with Article 38.072, § 2(b)(2). TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(2). The State admits the trial court was required to conduct a hearing outside the presence of the jury to determine the reliability of the outcry statement, however, the State argues A.A. testified to preparing the written statement and affirmed it was accurate, true, and correct. For these reasons, the State asserts a trial court ruling on the reliability of the written statement would have constituted either an abuse of discretion, a comment on the weight of the evidence, or both. Thus, the State maintains A.A.'s written statement satisfied the requirements of Article 38.072.

The record reflects neither side requested an Article 38.072 hearing nor did the trial court hold a hearing regarding the reliability of A.A.'s statement. As the proponent of the hearsay evidence, the State bears the burden to satisfy each element of Article 38.072 or must provide some

other hearsay exception. *Long v. State*, 800 S.W.2d 545, 548 (Tex.Crim.App. 1990). Appellant does not bear the burden of requesting a hearing outside the presence of the jury on the issue of the reliability and thus, did not waive his right to review by failing to request such hearing. *Id.*; *see also White v. State*, 549 S.W.3d 146, 151–52 (Tex.Crim.App. 2018). Rather, Appellant's hearsay objection sufficiently preserved error. *Long*, 800 S.W.2d at 548.

The requirements of Article 38.072 are mandatory. *Id.* at 547. The trial court abuses its discretion if it admits outcry witness testimony without first conducting a hearing on the reliability of the statement in compliance with Section 2(b)(2) of Article 38.072. TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(2); *Duncan v. State*, 95 S.W.3d 669, 671 (Tex.App.—Houston [1st Dist.] 2002, pet. ref'd). Because the trial court failed to make a reliability determination in compliance with Article 38.072, error occurred unless the statement was admissible under another hearsay exception. *Long*, 800 S.W.2d at 548.

On appeal, the State urges, as it did at trial, that it was not required to introduce A.A.'s oral outcry to her mother but was permitted to offer A.A.'s written outcry statement as substantive evidence. The State argues a "statement" under Texas Rule of Evidence 801(a) is "a person's oral or written verbal expression" and therefore argues that A.A.'s written outcry statement constitutes a "statement." TEX.R.EVID. 801(a). Appellant maintains A.A.'s handwritten statement does not constitute an outcry statement. Appellant raises the same complaint in Issue Two and Four, therefore we address both together.

### *Analysis*

For our analysis, we assume without deciding, A.A.'s written statement is not a proper outcry statement, is not admissible under any exception to the hearsay rule, and was improperly admitted without an Article 38.072 reliability hearing. However, despite Appellant's contentions,

the record shows that the same, or substantially the same evidence set forth in A.A.'s written statement, was admitted without objection during A.A.'s testimony. Without objection, A.A. testified to several acts of sexual abuse she suffered. Appellant "put his male part inside of [hers]" before she turned twelve. After A.A. turned twelve, Appellant made her touch his "male part." Appellant touched A.A. and penetrated her where she uses the bathroom with his finger within days of her outcry, and A.A. specified this first occurred when she was eleven and continued almost daily. In her written statement, A.A. confirmed Appellant began touching her inappropriately when she was eleven. A.A. described Appellant penetrated her with his finger and had done this "for awhile." On one occasion, Appellant penetrated her with his "penus." When she turned twelve, Appellant "was still doing it to [her]." Appellant would enter A.A.'s room at night and penetrate her with his finger "maybe a week every month in a row." On another occasion, Appellant again penetrated her with his "penus." A.A. disclosed Appellant would make her touch his "penus."

While we recognize A.A. testified to a single occasion of sexual penetration of her sexual organ by Appellant's sexual organ, however, A.A. further testified three methods and means of sexual abuse occurred on different occasions while she was eleven and twelve years old. Her written statement described the same methods and means of sexual abuse she suffered at the ages of eleven and twelve. Again, even if A.A.'s written statement was inadmissible at trial, its contents present the same or substantially the same evidence to which A.A. testified at trial. Accordingly, we hold the trial court's error in failing to determine the reliability of the statement in a hearing outside the presence of the jury was harmless because other evidence at trial proved the same facts. *See Leday*, 983 S.W.2d at 717–18; *Anderson v. State*, 717 S.W.2d 622, 627-28 (Tex.Crim.App. 1986)(holding that the admission of inadmissible evidence is harmless if other evidence that proves

23

the same facts is admitted at trial without objection). Issues Two and Four are overruled.

**Issue Three: Recorded Forensic Interview**

In Issue Three, Appellant claims the trial court erred when it admitted A.A.'s recorded forensic interview at Harmony House because it was inadmissible under Article 38.071—the rule of optional completeness.

### *Applicable Law*

Rule 107 of the Texas Rules of Evidence provides:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. 'Writing or recorded statement' includes a deposition.

TEX.R.EVID. 107. This rule permits otherwise inadmissible evidence admissible when that evidence is necessary to fully and fairly explain a matter the adverse party has "opened up." *Credille v. State*, 925 S.W.2d 112, 116 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). The purpose of Rule 107 is to reduce the possibility of confusion, distortion, or false impressions arising from the introduction of part of a writing, tape, or conversation out of context. *Id.* The otherwise inadmissible statement must be on the same subject and necessary to make the other statement fully understood. *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex.Crim.App. 2004). However, a recording is unnecessary, for example, if it is offered merely to demonstrate the absence of a statement by the complainant rather than the existence of a directly contradictory statement. *See id.* at 121–22.

### *Relevant Portion of the Record*

Del Campo, the forensic interviewer, testified at trial. Del Campo explained she received information a criminal offense had been alleged. She interviewed A.A. testifying she abstained

24

from suggestive, leading questions, and followed interview protocol. The interview was recorded, and Del Campo confirmed A.A. did not recant her statements.

During cross-examination, Del Campo testified:

Q. Do you recall any of the specifics of the particular interview involved in this case?

A. I do.

Q. Have you reviewed some notes to refresh your memory in anticipation of testifying today?

A. Yes, due to it being two – two years ago.

Q. Been a while. There was some concern earlier as to whether the last instance of misconduct before the outcry was on the Friday or Saturday before. Do you recall which day it occurred on?

A. It was the Friday before.

Q. So the Friday, not the Saturday?

A. Correct.

Q. All right. Are you aware of any – where the misconduct occurred, the locations?

A. In the home.

Q. But more specifically where at in the home?

A. In the child's room.

Q. Only in the child's room?

A. From what I can recall, yes.

Q. Do you recall any reference to the parents' room, the living room?

A. No.

Q. Or the barn or car?

The State objected and explained, "I've taken some leave to permit him to ask the questions, but this is obviously asking for hearsay from – in fact, he asked her, 'Have you seen the video, the statement and do you remember what was said?'" In response, Appellant argued his questions were not asked for the truth of the matter asserted, but for the purpose of impeaching A.A.'s earlier testimony. The trial court overruled the State's hearsay objection, and Appellant continued:

> Q. And Ms. Del Campo, I'm asking specifically because there was testimony earlier today that this misconduct occurred in her room, Joseph's room, the living room, the barn, and the car, and I was just curious as to whether or not that's consistent with what was told to you [during A.A.'s recorded forensic] interview.
>
> A. From what I can recall per the interview, it was mainly the instance – the things that had occurred happened in the child's bedroom.
>
> Q. Thank you. And earlier today, there was testimony that actual penetration by the male in the female organ only occurred on one instance. Is that consistent with what was said during the interview?
>
> A. During the interview, it was stated by the child that it happened twice.
>
> Q: No further questions, Your Honor.

The State recalled Sergeant Gonzalez and sought to have A.A.'s recorded forensic interview admitted. Appellant objected to the admission stating, "[t]he content of that video was particularly referenced pretrial in the defendant's objections to the outcry statement notice and were sustained as to Shirley Del Campo."

The trial court excused the jury and the following occurred:

26

THE COURT: I didn't mean to cut you off, but since we were going into an area that had previously been ruled on in the context of a limine motion in pretrial, the Court wanted to conduct the remainder of this outside the presence of the jury. And the jury has been excused and is no longer in the courtroom. If you would please restate your objection to the admissibility of State's Exhibit 3, the [recorded forensic interview] video.

[Defense Counsel]: Yes, Your Honor. The content of the video constitutes hearsay, not subject to any exception. The only exception it could possibly constitute would have been if the State's intent to use it as an outcry statement were allowed; however, defendant's objections to that notice were sustained as to Shirley Del Campo [who is] the interviewer in the video with the child. I believe the State is trying to offer this exhibit to bolster the truthfulness of the victim after it's been attacked by impeachment, but I don't believe this constitutes proper evidence of truthfulness. It is just an interview. There is no evidence of truthfulness there.

THE COURT: Response?

[The State]: Yes, Your Honor. The State certainly would object to any claim that we are violating any motion in limine. We did not offer it as an outcry statement as an exception to hearsay under 38.072. We're offering it both under 38.071, the actual person who gave the statement has testified. He's subject to further testifying. But further, this is the Rule of Optional Completeness and opening that proverbial door. I even objected about asking what's contained in that video, but in order to impeach his prior witness, [defense counsel] elicited information of what that video said and as the State, we believe now that video comes in. [The jury] should see the whole context to understand it compared to the testimony they've already heard that he's trying to impeach.

THE COURT: Further argument?

[Defense Counsel]: Your Honor, the specific instance as referenced in the video went directly to specific pieces of testimony offered by the victim previously. In no way does that merit the entire video being admitted into evidence. It's unduly prejudicial under Rule 403. I do nonetheless believe it still constitutes hearsay.

THE COURT: The objection is overruled. Note your exception. State's Exhibit 3 is admitted.

Appellant did not identify any inadmissible portions of the recorded forensic interview, nor did he seek to have any portions of the recording withheld from publication to the jury.

***Analysis***

By asking Del Campo to testify regarding specific statements A.A. made to her during the

27

recorded interview, Appellant sought to impeach A.A.'s credibility by suggesting A.A.'s statements to Del Campo were inconsistent. This is analogous to the facts in *Credille v. State*. In *Credille*, Credille sought to impeach the credibility of a child complainant by cross-examining the police officer who interviewed the child. 925 S.W.2d at 116. Credille inquired about specific statements the child made during the interview, and the State established the statements came from a recorded interview and successfully introduced the entire recording into evidence. *Id*. The Fourteenth Court of Appeals upheld the trial court's ruling under Rule 107. *See* TEX.R.EVID. 107; *Credille*, 925 S.W.2d at 117. The court concluded the inquiry of the videotaped conversation entitled the State the right to reply and offer any other evidence that was necessary to make the conversation fully understood. *Id.* The Court of Criminal Appeals examined this holding in *Sauceda,* and ultimately determined *Credille* had been correctly decided because specific statements made by the complainant during the interview, when taken out of context, could have given the jury a false impression by hearing only a portion of the conversation. *Sauceda,* 129 S.W.3d at 123.

Appellant relies on *Long v. State* to support his contention the State failed to timely object to the inadmissible hearsay and therefore cannot "mitigate damage done by the very inadmissible evidence that he willingly allowed to be introduced." 10 S.W.3d 389, 398–99 (Tex.App.— Texarkana 2000, pet. ref'd). In *Long*, Long repeatedly failed to object to inadmissible evidence— evidence that his co-defendant failed a polygraph exam—and did not request a mistrial. *Id.* at 399. The court declared an objection from Long would have entitled him to a mistrial. *Id*. The court explained its consideration of the harm resulting from the witness testimony, which revealed the defendant's polygraph test results, was so great it could not be cured by an instruction to disregard. *Id.* Instead, the court observed, Long attempted to use Rule 107 to mitigate the damage that arose

from the very evidence he allowed the State to introduce. *Id.* The court established Rule 107 does not allow a party who has failed to object to inadmissible evidence to present additional improper evidence "under the guise of rebuttal" and cited to cases regarding impeachment of a person's character. *Id.* The court found it was not error for refusing to allow Long to clarify why his co-defendant failed the polygraph. *Id.* at 400.

In this case, Appellant's questions to Del Campo regarding A.A.'s specific statements during the recorded interview challenged A.A.'s credibility and the consistency of her details, including the location of A.A.'s reported assaults and how often penile penetration occurred. Unlike in *Long*, the State objected after Del Campo was asked whether A.A. stated she had been sexually abused in the barn or car, and Appellant countered he was attempting to impeach A.A.'s prior testimony; the trial court overruled the State's hearsay objection. We find the State was not seeking to impeach the testimony of A.A. or Del Campo "under the guise of rebuttal." Rather, this testimony created the potential to confuse the jury and create false impressions, which is what Rule 107 is designed to counter. The trial court reasonably could have found the admission necessary to place A.A.'s specific statements in context of the entire interview. *Credille*, 925 S.W.2d at 117. We conclude the trial court did not abuse its discretion by admitting the entire videotaped recording under Rule 107.

Appellant also argues the recorded forensic interview was inadmissible under Article 38.071 of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 38.071. The State does not address the application of Article 38.071, and we conclude it does not apply here. Article 38.071 is commonly known as the "video statute." *See Bays*, 396 S.W.3d at 588. Article 38.071 governs the admissibility of a child victim's pretrial recorded statements and creates a hearsay exception only if stringent requirements are met, such as the child must be unavailable to

testify. TEX.CODE CRIM.PROC.ANN. art. 38.071, §§ 1, 2, 5; *Bays*, 396 S.W.3d at 588–89. Here, A.A. was available to testify and Article 38.071 is inapplicable. A.A.'s recorded forensic statement was therefore not admissible under Article 38.071.

Conversely, Appellant maintains the State failed to prove the recorded forensic interview was admissible under a hearsay exception. We disagree and conclude the trial court acted within its discretion when it applied Rule 107. Appellant further complains the State failed to explain why the entirety, rather than a portion of A.A.'s recorded forensic interview, was necessary to supply an omitted part of the recording on the same subject, or necessary to make the evidence fully understood. Again, as we have set out, Appellant's questions challenged A.A.'s credibility during her interview with Del Campo, and the recorded interview became necessary to give the jury context of the entire interview. *See Credille*, 925 S.W.2d at 117 (explaining although defense counsel only inquired into specific of the conversation between the child victim and the interviewer, he challenged the child's credibility and "it was necessary to show the specific instances in the context of the entire interview").

Appellant relies on *Sauceda v. State* to support his contention A.A.'s recorded forensic interview was inadmissible under Rule 107. 129 S.W.3d at 124. In *Sauceda*, the defense indicated it intended to call the forensic interviewer to testify that one of the child complainants in the case had not mentioned specific allegations during the recorded interview. *Id.* at 118. Defense counsel argued for the exclusion of the recorded interview because it contained references to extraneous offenses involving Sauceda's other nieces. *Id.* The court agreed with the State's assertion the entire recording would be admissible if the forensic interviewer testified. *Id.* at 119. The court of appeals determined the trial court did not err. *Id.* The Court of Criminal Appeals disagreed, and found the entire interview was necessary to prove a particular topic *was not* included in the interview;

however, the court drew a distinction, and that distinction applies here. *Id*. In *Sauceda*, the State relied on *Credille,* and the Court of Criminal Appeals recognized *Credille* differed from *Sauceda* in one important respect: Credille's defense counsel directed his examination to specific statements the child complainant made during the forensic interview which, if taken out of context, could have created a false impression by hearing only a part of the conversation. *Id*. Unlike *Credille*, in *Sauceda*, there was little danger of misleading the jury by the introduction of a specific subject that was never raised during the interview. *Id*. The procedural scenario in this case, however, aligns with that of *Credille* because the jury could have received a false impression after hearing only part of the recorded conversation between A.A. and Del Campo.

Appellant also complains the State improperly argued Rule 107 applies when a defendant pursues a subject "outside the realm of proper comment by the prosecutor" and misstated the record when it asserted defense counsel attempted to introduce the "specifics of what A.A. [had] said." Our analysis has encompassed these matters, and we need not reassess them. However, had the trial court improperly admitted A.A.'s recorded forensic interview under Article 38.071 or 38.072, that evidence was properly admitted under Rule 107. Moreover, if the trial court improperly admitted the recorded forensic interview, and if it was admissible under another exception to the hearsay rule, the record shows the same evidence, or substantially similar evidence, was admitted without objection when A.A. herself testified. To the extent any disparities exist between A.A.'s recorded statements in her interview and trial testimony, we defer to the role of the fact finder to resolve conflicting evidence. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex.Crim.App. 2014)(citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Issue Three is overruled.

**Issues Five and Six: Sergeant Gonzalez's Testimony**

In his fifth issue, Appellant identifies twenty-three instances in which he claims the State adduced harmful hearsay statements from Sergeant Gonzalez that were designed and calculated to demonstrate A.A. was a truthful and credible witness, and Appellant was guilty of sexually assaulting her. Appellant asserts these statements exceeded a law enforcement officer's permitted generalized description of possible criminality or explanation of how Appellant became a suspect.

The State is permitted to offer out-of-court statements in evidence to explain why a defendant became the subject of an investigation without violating the rule against hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex.Crim.App. 1995). To run afoul of the hearsay rule, an out-of-court "statement" need not be directly quoted. *Head v. State*, 4 S.W.3d 258, 261 (Tex.Crim.App. 1999)(*citing Schaffer v. State*, 777 S.W.2d 111, 114 (Tex.Crim.App. 1989)). When an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. *Id.* at 261. Whether the disputed testimony is hearsay depends on how strongly the content of the statement can be inferred from the context. *Id.* The question is whether the strength of the inference produces an inescapable conclusion that the evidence is being offered to prove the substance of an out-of-court statement. *Id.* at 262. However, as a threshold inquiry, we must consider whether Appellant preserved error by a proper trial level objection and ruling. TEX.R.APP.P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 13-14 (Tex.Crim.App. 2003).

Appellant complains of Sergeant Gonzalez's answers to twenty-three questions posed by the State. The record shows Appellant failed to object in twenty-one of those instances, which Appellant concedes. Appellant has failed to preserve error for twenty-one of the specified portions of the record; therefore, we are bound to restrict our analysis to the two instances Appellant did

object on hearsay grounds. TEX.R.APP.P. 33.1(a)(1)(A); TEX.R.EVID. 103; *Lopez v. State*, 253 S.W.3d 680, 684 (Tex.Crim.App. 2008).

In the first instance, the State asked, "did [A.M.] inform you basically what the accusation is and who it is against?" and Appellant objected to hearsay after Sergeant Gonzalez answered in the affirmative. The trial court sustained the objection and instructed the State to rephrase the question. The State then asked, "[w]ithout asking you what she told you, did she inform you of the accusation that had been made and who it was against?" Sergeant Gonzalez responded, "[A.M.] did." Appellant did not object to either the rephrased question or to Sergeant Gonzalez's answer. Because Appellant did not object to the rephrased question, he failed to preserve error. TEX.R.APP.P. 33.1(a)(1)(A); TEX.R.EVID. 103; Moreover, any error in the admission of the objected-to evidence was cured because the same evidence came in elsewhere without objection. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).

Later, without objection, the State asked Sergeant Gonzalez whether he questioned A.A. "anything about the truth or that it was not the truth concerning what she had told her mom," to which Sergeant Gonzalez replied, "[y]es. Sir." Next the State asked, "[a]nd what did she tell you?" Sergeant Gonzalez responded, "[s]he just nodded her head and stating it was the truth."[4] Appellant objected based on hearsay. The State responded, "[e]xception to hearsay, Your Honor. It dictates the action that this witness would take and it also sets up a foundation for a further statement that I'm about to present." The trial court sustained the untimely hearsay objection. *See Dinkins*, 894 S.W.2d at 355 ("If he fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and error is waived."); *Mack v. State*, 872 S.W.2d 36, 38 (Tex.App.—Fort Worth 1994, no

---

[4] This language also encompasses part of Appellant's sixth issue.

pet.)(recognizing if it does not become apparent the evidence is objectionable until after it is admitted, then the defense must object as soon as it does become apparent and move to strike the evidence from the record).

The Court of Criminal Appeals has found, "[o]rdinarily, a prompt instruction to disregard will cure error associated with an improper question and answer[.]" *Ovalle v. State,* 13 S.W.3d 774, 783 (Tex.Crim.App. 2000). Appellant failed to ask the trial court to strike the testimony, failed to seek a curative instruction to disregard Detective Gonzalez's answer, and consequently, the trial court did not instruct the jury to disregard the objected-to testimony. Without an instruction to disregard, the complained-of testimony remained before the jury, which it was free to consider. *See Estrada v. State*, 313 S.W.3d 274, 302, 313 (Tex.Crim.App. 2010)(holding the trial court correctly sustained the State's objections to hearsay, but because an objection is not a curative measure meant to remove the objectionable statements from the jury's consideration, the jury could consider the evidence because the State failed to request an instruction to disregard). Now on appeal, Appellant fails to explain why an instruction to disregard, had it been timely requested, would not have cured error, if any, during the State's examination of Detective Gonzalez. Further, A.A. previously testified about the sexual abuse she suffered and identified Appellant as her abuser. At the outset of her testimony, A.A. stated she understood the difference between the truth and a lie and agreed to testify truthfully. At the conclusion of her testimony, A.A. affirmed her testimony was truthful. Appellant did not object to this testimony. As the role of fact finder, "[t]he jury are the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony." *Lopez v. State*, 172 Tex.Crim. 317, 356 S.W.2d 674, 676 (1962). We conclude evidentiary error, if any, did not have a substantial and injurious effect or influence on the jury's verdict and was harmless. Issue Five is overruled.

In his sixth issue, Appellant asserts the trial court erred when it admitted A.A.'s written statement—State's Exhibit 2. We have previously concluded above that any error in the admission of A.A.'s written statement was harmless because the same, or substantially the same evidence, was presented without objection during A.A.'s testimony. According to Appellant, the trial court improperly allowed Sergeant Gonzalez to read A.A.'s written statement "as if [its] acquisition . . . was part of his official investigation," thereby effectively signaling the truth of the statement to the jury, and improperly permitted the State to adduce testimony showing A.A.'s statement was consistent with her other statements, which thereby placed Sergeant Gonzalez "in a position to vouch for A.A.'s credibility and truthfulness." The State argues this issue is multifarious and unclear. Moreover, because Appellant did not object when the State asked Detective Gonzalez to read the statement to the jury, the State also asserts Appellant has not preserved this issue for appeal. We agree.

Although no "magic words" are required, an objection must be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error, and we will consider the objection in the context in which the complaint was made and the parties' shared understanding of the complaint at that time. *Pena v. State*, 353 S.W.3d 797, 807 (Tex.Crim.App. 2011). After careful consideration, we find it is clear Appellant's complaint on appeal is based on the *reading* of A.A.'s statement into the record, rather than its actual admission. The record clearly reflects A.A.'s written statement was not made as part of Sergeant Gonzalez's investigation, but rather, was prepared at her mother's request.

At trial, Appellant failed to object to Sergeant Gonzalez's testimony regarding how he learned of A.A.'s outcry or any "initial reports." Appellant failed to object before, during, or after Sergeant Gonzalez read A.A.'s written statement to the jury and did not request or obtain a running

35

objection on any basis. To preserve error in admitting evidence, a party must object and obtain a ruling, and object each time the inadmissible evidence is offered, or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003). We conclude Appellant has not preserved this complaint for our review. TEX. R. APP. P. 33.1(a)(1)(A). Issue Six is overruled.

**Issue Eight: Del Campo Testimony**

In his eighth issue, Appellant maintains the trial court erred when it overruled his hearsay objection and allowed the State to elicit Del Campo's testimony that A.A.'s "inadmissible" allegations of sexual assault during the forensic interview were consistent with information Del Campo received from "inadmissible hearsay sources."

After A.A. testified to the sexual abuse without objection, the State asked Del Campo whether A.A. told her "anything different that would conflict with the allegations that [Del Campo] had received." Del Campo answered, "No[,]" Appellant objected based on hearsay. The trial court overruled Appellant's objection after the State explained, "Your Honor, I'm not asking her to say—in fact, I've been very careful to not ask what [was] said or [what] any recording demonstrated, just was it consistent with the accusations that [Del Campo] was talking to [A.A.] about."[5]

*Analysis*

Relying on a footnote in *Sandoval v. State*, Appellant argues the trial court abused its discretion when it allowed the State's "consistency" question about A.A.'s statements. 409 S.W.3d 259, 281-84 (Tex.App.—Austin 2013, no pet.).

The relevant footnote from *Sandoval* states:

---

[5] When A.M. testified as a defense witness, the State asked whether A.A.'s description of sexual abuse had remained consistent. A.M. confirmed A.A.'s statement to her was basically the same, except for some information she had learned from the SANE nurse and CPS, including information A.A. provided during the recorded forensic interview. Appellant did not object to this question or A.M.'s answer.

36

> Questions about consistency among statements are not necessarily improper, as they may or may not convey the contents of the out-of-court statement in violation of the hearsay rule. *See Head v. State,* 4 S.W.3d 258, 264 (Tex. Crim. App. 1999) (Womack, J., concurring) (in context of case, 'the evidence was offered to prove that there were no inconsistencies at that time in the investigation which would have called for [the investigator] to take other investigatory steps. The evidence was that the three persons had given consistent statements, but there was no evidence of the contents of those statements.'). Here, however, the statements themselves were admitted into evidence. Thus, the questions about consistency improperly conveyed the content of the statements.

*Sandoval*, 409 S.W.3d at 288 n.16.

In *Head v. State*, the case cited within the *Sandoval* footnote, the court found when determining whether questions regarding the consistency of statements are improper, it is important to consider whether the question improperly conveys the *content* of the statement. 4 S.W.3d at 264; *Sandoval*, 409 S.W.3d at 288 n.16. Here, however, the record demonstrates neither the State's question, nor Del Campo's answer, conveyed the content of A.A.'s statements regarding the incidents of abuse that A.A. previously testified to absent objection. *Compare Sandoval*, 409 S.W3d at 288 (explaining erroneously admitted hearsay was admitted over objection before the child victim had testified). And, in this instance, the State sought to elicit testimony regarding an absence of conflicting statements, not hearsay. *See Riley v. State*, 249 S.W. 1065, 1065 (Tex.Crim.App. 1923)(explaining it was proper to permit witness to testify she knew her mother did not consent to the witness's act of taking fowls as the testimony was "not necessarily hearsay or the opinion of the witness[] but may have been based wholly and entirely upon facts known to said witness"). Del Campo knew A.A.'s statements did not conflict and provided a non-hearsay based answer—"No." Although Del Campo's answer did not satisfy the present sense impression exception, we conclude Del Campo's response did not include the contents of A.A.'s statements to render it hearsay. TEX.R.EVID. 803(1)(defining a present sense impression as statement describing or explaining an event or condition, made while or immediately

after the declarant perceived it, and declaring a present sense impression is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness). Issue Eight is overruled.

**Issue Nine: Jansky's Expert Qualifications**

In his ninth issue, Appellant argues the trial court abused its discretion when it overruled Appellant's *Daubert* objections to Jansky's qualification as an expert, and his objection her testimony would not assist the jury in deciding the case, but rather, would supplant the jury's verdict.

*Applicable Law*

We review a trial court's ruling on the qualification of an expert and the admissibility of expert testimony for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex.Crim.App. 2019); *Coble v. State*, 330 S.W.3d 253, 272 (Tex.Crim.App. 2010). Texas Rule of Evidence 702 provides, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX.R.EVID. 702. To be admissible, the proponent of the expert scientific evidence must demonstrate, by clear and convincing evidence, that the testimony is "sufficiently reliable and relevant to help the jury in reaching accurate results." *Wolfe v. State*, 509 S.W.3d 325, 335-36 (Tex.Crim.App. 2017), *quoting Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992). The proponent of the expert and her testimony must prove: (1) the expert is qualified; (2) the testimony is based on a reliable scientific foundation; and (3) the testimony is relevant to the issues in the case. *Wolfe*, 509 S.W.3d at 336. "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Vela*, 209 S.W.3d at 131.

### *Relevant Portion of the Record*

During the "gatekeeper" hearing regarding Jansky's qualifications, Appellant challenged Jansky's testimony. *See E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). At the outset of Jansky's testimony, the State requested the trial court take judicial notice of the "general field" of psychology and social work, including the validity of techniques applying theories in those fields, such as therapeutic counseling. Appellant acknowledged, "while I don't necessarily disagree on its face, I've seen no evidence to support the proffer of judicial notice[.]" Jansky, a licensed clinical social worker with a master's degree in social work, served as the director of trauma services at the Center for Child Protection in Austin for more than twenty years, and was trained to treat trauma and child sexual abuse, physical abuse, and emotional abuse. Jansky agreed certain behavioral characteristics and indicators, including acts that may be consistent with sexual abuse, are part of an accepted theory that could be applied in her field of expertise. Jansky was also certified by the Child Trauma Academy of Houston as a Neurosequential Model of Therapeutics clinician, counseled and treated hundreds of children for sexual abuse, and presented at local and national conferences on these topics. She observed, supervised, and provided therapeutic counseling and treatment to A.A. since early 2016.

When the State proffered Jansky as an expert witness, Appellant objected Jansky's testimony would supplant, rather than aid, the jury's fact-finding determination. The trial court requested to hear more specific information from Jansky to establish her expertise. Jansky testified the field of child abuse relies upon accepted principles and explained her training and education included an understanding and knowledge of the science and symptoms of child abuse, particularly sexual abuse, physical abuse, and issues related to trauma. She explained victims are assessed for symptoms, then proceed through treatment. Diagnosis involves conversations with the patient to

assess the severity of the "wound" and an appropriate treatment is then determined. Jansky testified her field of expertise in child abuse and trauma has been acknowledged as legitimate and is recognized by national accreditation.

When the State asked Jansky to explain how her testimony would relate to her field of expertise, she answered, "I believe that I can speak to the dynamics and symptoms and signs of child sexual abuse. And then specifically how that relates to this child victim." She then explained there are "very clear[ly] identified signs and symptoms of abuse that—and trauma—that we look for, and so one of the things that's very important is that you look at those symptoms objectively and not in the frame of, 'Well, it's because of this or it's because of that.'" Jansky stated that clearly identified principles guide her assessments which she relies on to form her opinion. Jansky reviewed A.A.'s medical records—which were prepared by qualified persons under Jansky's supervision—and based on her own treatment of A.A., Jansky found A.A. exhibited sexual abuse indicators, including guilt, concern and fear for her siblings, reoccurring nightmares, difficulty sleeping, difficulty in relationships and the ability to trust others, acting out, low self-esteem, and disassociation. Jansky confirmed she could assist the jury in understanding the distinctions between behaviors a child might exhibit and how they may differ from those of an adult. This includes recantations that may occur but are uncommon, as well as a child's changes in descriptions of time and location of events. When Jansky testified she believed her expertise and testimony would not supplant the jury's fact-finding role and would assist the jury in understanding A.A.'s circumstances, the trial court sustained Appellant's speculation objection. During cross-examination, Jansky agreed while child trauma and therapeutic counseling are not different, they are also not the same, and she stated A.A.'s removal from her home and separation from her mother, friends, and animals also may have contributed to her traumatic experience. At the

conclusion of the hearing, Appellant renewed his objection Jansky's testimony would merely supplant, rather than aid, the jury's fact-finding determinations. The trial court overruled his objection and permitted Jansky to testify.

*Analysis*

The State argues Appellant has failed to preserve this issue for our review. The State correctly posits Appellant did not object to Jansky's qualifications or to the reliability of the underlying theories she addressed, and instead objected on the very limited basis Jansky's testimony did not "add[] anything to the jury's determination" and "would supplant it."

When evidence is conditionally relevant under Rule 104 but is not "connected up" before the end of the trial, "the objecting party must reurge his relevancy complaint after all the proof is in, ask that the offending evidence be stricken, and request that the jury be instructed to disregard it [or] his objection will be deemed forfeited on appeal." *Fish v. State*, 609 S.W.3d 170, 182 (Tex.App.—Houston [14th Dist.] 2020, pet. ref'd)(*quoting Fuller v. State*, 829 S.W.2d 191, 197–99 (Tex.Crim.App. 1992), *overruled on other grounds by*, *Riley v. State*, 889 S.W.2d 290, 301 (Tex.Crim.App. 1993)). The State asserts Appellant failed to reurge his complaint Jansky's testimony would supplant rather than aid the jury's fact-finding role. Further, he failed to request the evidence be stricken or the jury instructed to disregard the evidence, therefore he has forfeited this complaint. However, the testimony Appellant complains of was not adduced at trial but was presented to the trial court as gatekeeper and arguably is encompassed by Appellant's jury-supplantation complaint. *See Bekendam v. State*, 441 S.W.3d 295, 300–01 (Tex.Crim.App. 2014) (recognizing that although the point of error on appeal must comport with the objection made at trial, reviewing courts are not hyper-technical in their examination of whether error was preserved).

41

In its role as a gatekeeper, the trial court must decide any preliminary challenge to a witness's qualifications and evidence's admissibility. TEX.R.EVID. 104(a); *Vela*, 209 S.W.3d at 131. In discharging this gatekeeper role, the trial court has the difficult task of determining what is irrelevant or likely to confuse the jury in its decision-making process. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex.Crim.App. 2010). The trial court's gatekeeping role, however, does not take the place of the traditional and appropriate means of attacking shaky but admissible evidence through cross-examination. *Wolfe*, 509 S.W.3d at 336.

We recognize, during the hearing—unlike Appellant's complaint on appeal regarding Jansky's gatekeeper-hearing testimony, specifically Jansky's declaration her testimony would relate to the field of child sexual abuse because she is able to "speak to the dynamics and symptoms and signs of child sexual abuse[,] [a]nd then *specifically how* that relates to this child *victim*[,]"— Appellant did not object to this exact testimony, which the State elicited in an attempt to address the trial court's gatekeeping concerns regarding "what exactly the expert's expertise is going to bring in this case to assist the tier of fact . . . ." The trial judge advised the State it "would like to hear something more about how therapeutic counseling relates specifically to the issues that are before this court in this case, which go to assisting the jury, the trier of fact, in determining some facts[.]" The complained-of answer—Jansky's response to how the dynamics, symptoms, and signs of child sexual abuse relate specifically to A.A.—directly addressed the trial court's request for additional information about how Jansky's testimony could aid the jury in its role as fact finder. We recognize Jansky's specific answer regarding "this child *victim*" would be inappropriate and would supplant the jury's fact-finding role if the testimony had been made in the presence of the jury, *but it was not*. Moreover, the trial court's role during the gatekeeper hearing was not as a fact finder. Rather, the trial court acted as a gatekeeper in assessing whether Jansky was an expert

whose testimony would aid the fact finder at trial, the jury. Even if defense counsel had objected to this specific testimony, defense counsel's jury supplantation objection embodies the complained-of testimony and was reurged at the conclusion of the gatekeeper hearing.

Nevertheless, it is clear from our review of the record that the trial court considered, discussed, and ruled on Jansky's qualifications, as well as the reliability and relevance of her testimony, including whether her background was sufficiently tailored to the specific area of child sexual abuse her testimony offered. *See Vela*, 209 S.W.3d at 131, 133. The depth of Jansky's professional career included her experience as the Director of Trauma Services at the Children's Advocacy Center—where she provided services for more than twenty years in cases involving sexual abuse of children—as well as her professional training and presentations, and personal experience in conducting and supervising investigations of sexually abused children. This was sufficient to qualify her to explain the dynamics and common characteristics of a sexually abused child, including the dynamics and characteristics exhibited by A.A. We conclude the specific testimony about which Appellant complains on appeal did not render the trial court's qualification of Jansky an abuse of discretion.

The trial court's ruling Jansky was qualified as an expert in the field of child abuse and child sexual abuse and her testimony was reliable and relevant was within the zone of reasonable disagreement. *See, e.g., Duckett v. State*, 797 S.W.2d 906, 920 (Tex.Crim.App. 1990)(en banc) (concluding that social worker with experience in many cases of child sexual abuse was qualified as an expert in the field and that the expert's testimony could aid the jury in understanding why the victim changed her testimony and appeared confused), *disapproved on other grounds by, Cohn v. State*, 849 S.W.2d 817, 819 (Tex.Crim.App. 1993)(en banc). Because the trial court's ruling lies within the zone of reasonable disagreement, we will not disturb it. *Russeau v. State*, 291 S.W.3d

426, 438 (Tex.Crim.App. 2009).

Even if we were to assume error occurred, we conclude any such error did not affect Appellant's substantial rights. Jansky did not opine about A.A.'s truthfulness and her testimony did not determine a fact in issue for the jury. *See Yount v. State*, 872 S.W.2d 706, 712 (Tex.Crim.App. 1993)(holding that Rule 702 does not permit an expert to opine that a complainant or class of persons to which the complainant belongs is truthful). Issue Nine is overruled.

**Issue Ten: Jansky's Medical Diagnosis Testimony**

In his tenth issue, Appellant contends the trial court erred when it permitted Jansky to testify before the jury A.A. had disclosed Appellant had sexually abused her. Appellant complains Jansky's hearsay testimony regarding A.A.'s proclamation of sexual abuse was improper because the statement was not made for purposes of medical diagnosis or treatment. Appellant further argues the statement does not satisfy Article 38.072 hearsay exception to outcry evidence, and Jansky improperly supplanted the jury's function by stating Appellant had sexually assaulted A.A. Appellant did not object to this specific statement or request a running objection, and the State urges this issue has not been preserved. TEX.R.APP.P. 33.1(a)(1)(A). We agree.

At trial, Jansky testified she provided therapeutic services to A.A. for approximately one hundred sessions over the course of two years. The State asked Jansky, "[w]hat have you been told by [A.A.]" and defense counsel objected on grounds of hearsay. During a bench conference, the State argued the hearsay statement was admissible under the medical diagnosis or treatment exception set forth in Rule 803(4). The State claimed the foundation was laid for this testimony under Rule 803(4) by asking what information Jansky had received which allowed her to properly evaluate A.A. and provide appropriate services. *See* TEX.R.EVID. 803(4)(declaring a statement made for medical diagnosis or treatment is not excluded by the rule against hearsay, regardless of

44

whether the declarant is available as a witness).

The trial court overruled Appellant's objection noting "[t]he Court's ruling is that it does fall within [the Rule 803(4)] exception." After Jansky testified regarding standard practices, the State's prosecutor asked Jansky what she had learned from A.A. Jansky testified "[A.A.] [had] said that she was sexually abused by the Defendant." Appellant failed to object to this response, which he now complains of on appeal. Appellant has failed to preserve this issue for review. Moreover, Jansky did not directly testify Appellant had abused A.A., and the trial court ruled this evidence was admissible under Rule 803(4). Jansky's testimony did not suggest or confirm A.A. was truthful or credible as Appellant urges in his reply brief. *See* TEX.R.APP.P. 38.1(a)(1)(A); *Yount*, 872 S.W.2d at 712. Issue Ten is overruled.

**Issues Seven and Eleven: Jansky's Other Testimony**

We next consider in tandem Appellant's seventh and eleventh issues in which he asserts the trial court egregiously erred by permitting Jansky's testimony on additional matters. Appellant does not set forth any standard of review, authority, or analysis supporting alleged error, if any, was egregious.

In his seventh issue, Appellant claims he suffered egregious error arising from Jansky's testimony on matters unrelated to the dynamics and common characteristics of a sexually abused child. Appellant asserts he was not required to preserve error because Jansky's testimony was speculative or conclusory. He acknowledges Texas courts have recognized a licensed clinical social worker who is qualified by education and experience may testify regarding the usual behavior of sexually abused children to explain the dynamics and common characteristics of a sexually abused child but may not opine as to whether a defendant has committed the offense or whether the child complainant has testified truthfully or is credible. *See Cohn v. State*, 849 S.W.2d

45

817, 818–19 (Tex.Crim.App. 1993); *Chavarria v. State*, 307 S.W.3d 386 (Tex.App.—San Antonio 2009, no pet.).

In part, Jansky testified A.A. suffers from disassociation, guilt, shame, loss, sadness, insomnia, and nightmares. A.A. developed a maladaptive coping mechanism in which she wears tight clothing to bed and explained to Jansky she does this to keep Appellant away. This trauma-related behavior continued despite A.A. moving to another city. Jansky testified A.A. lost her family, mother, animals, school, friends, and "just about everything[,]" but had not recanted the sexual abuse. Appellant asserts Jansky's testimony was outside the scope of her expertise and was calculated to demonstrate A.A. was truthful, credible, and had no bearing or relevance on whether A.A. displayed behavioral characteristics of sexual abuse.

The record demonstrates Appellant failed to object to the questions posed by the State or the testimony on these matters. The State asserts Appellant has forfeited these complaints for our review. We agree. TEX.R.APP.P. 33.1(a)(1)(A). Moreover, the Texas Court of Criminal Appeals has recognized a child-declarant's statement made for the purpose of facilitating the child's own mental health "may carry the same self-interested motive as a statement made to facilitate the declarant's physical well-being. If so, there is no reason to exclude it from Rule 803(4)'s ambit, regardless of whether the care-giver is . . . some other trained mental-health professional." *Taylor v. State*, 268 S.W.3d 571, 587–88 (Tex.Crim.App. 2008). Moreover, had Appellant preserved error—and assuming without deciding the trial court abused its discretion—A.A. testified prior to Jansky's testimony, describing how and when Appellant sexually abused her, and its effect upon her. Therefore, had error been preserved, it would have been harmless. Issue Seven is overruled.

In his eleventh issue, Appellant complains the State improperly adduced testimony from Jansky that purportedly "vouched for [A.A.'s] truthfulness and credibility . . . as a witness and as

46

an alleged crime victim[,]" and argues this error was egregious. The State again asserts Appellant failed to object to the colloquy occurring before or after either the question to Jansky, or her answer about which Appellant now complains, and therefore concludes Appellant has failed to preserve error. We agree.

We observe that generally an expert's testimony on whether a particular witness is truthful is inadmissible under Rule 702. TEX.R.EVID. 702. However, expert testimony a child exhibits behavioral characteristics that have empirically shown to be common among sexually abused children is relevant and admissible under Rule 702. *Yount*, 872 S.W.2d at 708–09; *Cohn*, 849 S.W.2d at 819. Moreover, such testimony is not objectionable that it bolsters the credibility of the child complainant. *Cohn*, 849 S.W.2d at 820–21.

Jansky did not offer a direct opinion A.A. was truthful regarding her sexual abuse claims or A.A. belonged to a class of persons that was truthful or worthy of belief, nor did she offer a direct opinion A.A. was credible. Rather, Jansky testified to the behavioral characteristics of children who have suffered sexual abuse. Her testimony was admissible to assist the jury in assessing A.A.'s testimony. Issue Eleven is overruled.

**Issues Twelve through Fifteen: The SANE's Testimony and SAFE Report**

In Issues Twelve through Fifteen, Appellant asserts the trial court abused its discretion when it admitted State's Exhibit 6 and improperly allowed Armstead, the SANE nurse, to testify, which he claims is egregious error.

*Applicable Law*

Under Rule 803(4), a statement made for medical diagnosis or treatment is not excluded by the rule against hearsay, regardless of whether the declarant is available to testify. TEX.R.EVID. 803(4). A statement made for medical diagnosis or treatment is one made for—and is reasonably

pertinent to—medical diagnosis or treatment and describes medical history, past or present symptoms or sensations, their inception, or their general cause. TEX.R.EVID. 803(4)(A), (B). To be admissible under Rule 803(4), a hearsay statement must be pertinent to diagnosis or treatment. *Taylor v. State*, 268 S.W.3d 571, 591 (Tex.Crim.App. 2008). The proponent of the evidence must show the out-of-court declarant possessed an awareness the statements were made for purposes of medical diagnosis or treatment and proper diagnosis or treatment depends upon the veracity of the declarant's statements. *Id.*

### *Relevant Portion of the Record*

Armstead, the sexual assault nurse examiner ("SANE") who examined A.A., testified SANEs attain certification through state or national organizations for the purposes of collecting forensic evidence, completing physical examinations, providing a diagnosis and impressions from the exam, and the evidence that is collected. Appellant affirmatively stated he had no objection to Armstead testifying as an expert witness.

At trial, Armstead explained the Sexual Assault Forensic Exam ("SAFE") begins with a patient history for the purpose of providing a medical diagnosis and treatment. The SANE collects history information for both acute exams, which include the collection of forensic evidence when the alleged sexual assault has occurred within 96 hours of the examination, and a chronic exam, which is typically performed without the collection of forensic evidence on children who have made an outcry of sexual assault after a period greater than 96 hours. After the history portion of the exam, the SANE examines the patient's body, including the genitalia and rectum, for injuries, scars, and healing patterns. The SANE then prepares findings from the assessment. The SANE documents the patient's statements verbatim in the medical record, but no recording of the SAFE is made. Photographs are taken of findings made during the physical examination of the patient.

48

Armstead performed a chronic SAFE examination of A.A. When the State introduced State's Exhibit 6, the Forensic Examination Report accompanied by a business record affidavit, Appellant objected, "I don't think that hearsay within hearsay is subject to [the] business record exception. So[,] I would object to the hearsay within the business record." The State responded, "what else is in a business record but hearsay, what someone is describing[?]" The State also argued the record of A.A.'s exam "was part of the diagnosis of the injury and is permitted because to treat a person, [the SANE asks] then what happened and [obtains] a description of what happened to afford [the SANE] the opportunity to give [the patient] the treatment that is warranted in the situation."

The trial court admitted State's Exhibit 6 after declaring:

> The Court, in reviewing the objections, notes that a business record can contain hearsay by a party owner, the person who created the business record, but as stated by the State, there is an exception to hearsay in Rule 803 for medical records for treatment or diagnosis. Accordingly, the defendant's objection is overruled[.]

Armstead confirmed State's Exhibit 6 was a business record she was familiar with and was relevant to A.A.'s SAFE examination. Armstead began the SAFE examination with A.A.'s history and took notes on A.A.'s physical appearance as well as patterns of injury and healing. The non-hearsay information contained in the report includes notations regarding A.A.'s demeanor and physical appearance, which is described as "[s]hy, does not make eye contact. Eyes red, with tears streaming down the face. States she is scared and appears timid with shoulders lowered, head bowed down." Armstead then began the physical examination. Armstead explained when she is diagnosing, treating, and making findings, the description of the events, as well as the patient's age, are important factors, especially the latter because differences in anatomy and estrogen levels are age-related. A.A.'s physical positions during the examination are noted in the report and the areas where trauma was not observed also are noted. The report describes that A.A.'s hymen was

49

examined and includes a note indicating the finding of "healed transections." Armstead testified a healed transection is a hymenal tear that extends to the vaginal wall. A.A. had two healed transections and thinning of the hymen, the latter of which is typically present in repeated penetration. Armstead's impressions on the SAFE report include a comment that A.A. had reported sexual assault in her history as well as "[p]ositive findings on genital exam." Armstead acknowledged she had taken photographs of A.A. for treatment purposes and stated the photographs were relevant to A.A.'s examination. Armstead further opined that A.A.'s injuries were consistent with A.A.'s description the abuse and stated her impression of repeated sexual assault was in accordance with A.A.'s patient history.

*Analysis*

The State argues Appellant has not preserved Issues Twelve through Fourteen because he presented a general hearsay objection and failed to specify the particular statements he was objecting to when he stated, "I don't think that hearsay within hearsay is subject to that business record exception[,] [s]o I would object to the hearsay within the business record." The State maintains Appellant has failed to sufficiently inform the trial court of the basis of the complaint he now raises on appeal. Due to the brevity of State's Exhibit 6 and the hearsay statements contained within the history portion, we conclude the trial court was sufficiently informed of the basis of Appellant's trial complaint relating to the hearsay nature of A.A.'s statements to Armstead.

In his twelfth issue, Appellant asserts the trial court abused its discretion by admitting State's Exhibit 6 and permitting Armstead to testify to its contents. According to Appellant, the State failed to establish an applicable hearsay exception to render the exhibit admissible. However, at trial, the State argued the complained-of hearsay was admissible under Rule 803(4), and the trial court agreed. On appeal, Appellant specifically complains the record does not show A.A. knew

the importance of telling Armstead the truth for the purpose of medical diagnosis or treatment. TEX.R.EVID. 803(4); *Taylor*, 268 S.W.3d at 588–89. Appellant did not make this argument at trial. However, "courts can infer from the record that the victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis." *Franklin v. State*, 459 S.W.3d 670, 677 (Tex.App.—Texarkana 2015, pet. ref'd). Appellant argues the trial court was not able to infer from the record A.A. knew the importance of telling the truth to Armstead because there is no evidence the examination was conducted for purposes of diagnosing or treating a medical condition. We disagree.

Although State's Exhibit 6 does not reflect a course of treatment, it does include a diagnosis, specifically A.A.'s hymen had two areas of healed transections as well as a positive impression after the genital exam A.A. endured repeated sexual assault corresponding to A.A.'s history. Armstead testified the transections or tears of A.A.'s hymen extended to the vaginal wall, and the wall of the hymen had been thinned, which is indicative of repeated penetration. It is possible treatment was not required for A.A.'s healed physical injuries, but, arguably, whether an injury existed and whether treatment was necessary would have remained unknown in the absence of a medical examination. Nonetheless, this evidence establishes the examination was conducted for purposes of diagnosing a medical condition and as a result of the medical examination, Armstead diagnosed the medical condition of A.A.'s hymen. Appellant also argues the State failed to satisfy its burden of establishing an applicable exception to permit the admission of A.A.'s hearsay statements. *See Taylor*, 268 S.W.3d at 578–79. Issue Twelve is overruled.

In his thirteenth issue, Appellant complains the trial court abused its discretion when it overruled his "hearsay" objection, admitted State's Exhibit 6, and permitted Armstead to testify about the statements A.A. made to her. Appellant's underlying basis for this complaint is that

"many of A.A.'s statements were not shown to be pertinent to medical diagnosis or treatment." We recognize Appellant did not make this specific argument at trial and only complained the "hearsay within hearsay" statements did not satisfy the business record exception. The State then countered State's Exhibit 6 was admissible under Rule 803(4) exception, and Appellant failed to seek to exclude specific portions of the exhibit withheld from the jury's consideration.

Initially, Appellant repeats his Issue Twelve argument here, asserting "A.A. would not have known that her statements were made for purposes of medical diagnosis or treatment." We have overruled this complaint. Appellant also argues "virtually every oral statement [that] A.A. related to Armstead" had no relevance to A.A.'s SANE examination. We disagree.

As the Fort Worth Court has observed, "[t]he object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the [child's] medical diagnosis and treatment." *Beheler v. State*, 3 S.W.3d 182, 188 (Tex.App.—Fort Worth 1999, pet. ref'd). Moreover, the identity of an offender falls within the ambit of this hearsay exception because it is relevant to treatment, particularly in family violence cases, insofar as it presents an environmental and safety issue that could frustrate diagnosis and treatment. *See, e.g.*, *Bargas v. State*, 252 S.W.3d 876, 896 (Tex.App.—Houston [14th Dist.] 2008, pet. ref'd)(explaining the identity of a child abuser is medically relevant because treatment could include removal of the child from an abusive environment). In this instance, A.A. lived with Appellant at the time of the alleged sexual abuse, and A.A. told Armstead during the examination Appellant had sexually abused her "in the house" and "in my room" as described in State's Exhibit 6.

Appellant did not complain to the trial court regarding any specific hearsay statements as he now complains on appeal. However, the record shows Armstead obtained A.A.'s statements

during the history portion of the exam, as Armstead is required to do during SAFE exams, and the purpose of obtaining A.A.'s history was to guide Armstead through her assessment of A.A. and to aid in identifying areas where injury or healing may have occurred. A.A. informed Armstead Appellant had touched her "on [her] private parts," pointed to her breasts, buttocks, and female sexual organ, made A.A. touch "his thing" and had put his "thing" in her bottom. A.A. advised Armstead Appellant directed her to open her legs and had stuck his finger "up inside my front." A.A. also stated Appellant had placed his "private" in A.A.'s "private" and it hurt. A.A.'s statements to Armstead described the areas of her body where a medical diagnosis could be made and for which treatment may have been necessary, and therefore, those hearsay statements to Armstead and recited within State's Exhibit 6 were pertinent to A.A.'s medical diagnosis or treatment. TEX.R.EVID. 803(4).

We are unpersuaded by Appellant's assertion that Armstead did not perform an acute exam and collect forensic evidence from A.A. establishes her medical examination was only performed for prosecution purposes rather than to provide a medical diagnosis or treatment. Although A.A. testified Appellant had last placed his "thing" in her "[a] couple of months ago," she also testified, without reference to a timeframe, "[m]ost of the time he touches me when I'm asleep and tells me to open my legs. . . . He sticks his finger up inside my front." It was possible during the examination Armstead may have diagnosed a more recent, and possibly unhealed, injury to A.A. which occurred more than 96 hours from the time of the exam, even in the absence of forensic evidence.

The trial court's ruling A.A.'s hearsay statements and Armstead's testimony regarding those hearsay statements were admissible under Rule 803(4) was within the zone of reasonable disagreement. The trial court did not abuse its discretion by concluding the history that A.A. provided to Armstead was made for and pertinent to her diagnosis or treatment. Issue Thirteen is

53

overruled.

In his fourteenth issue, Appellant asserts the trial court erred when it admitted State's Exhibit 6 and Armstead's testimony regarding its contents because the State failed to prove any diagnosis or treatment by Armstead was dependent on the veracity of A.A.'s statements regarding Appellant's sexual abuse of her. In support of this contention, Appellant emphasizes the areas on A.A.'s body where no evidence of injury was found, asserting without citation to or any basis in the record, "Appellant's finger would not be larger than the opening of A.A.'s vagina[,]" and would not result in A.A.'s hymenal injuries. For these reasons, he concludes the State did not prove State's Exhibit 6 was admissible under Rule 803(4). We are unpersuaded by this additional argument. We rely on our analyses of Issues Twelve and Thirteen and conclude the trial court's ruling that State's Exhibit 6 and Armstead's testimony was admissible under Rule 803(4) is within the zone of reasonable disagreement. Issue Fourteen is overruled.

In his fifteenth issue, Appellant argues the trial court egregiously erred when it permitted Armstead to opine A.A.'s injuries were consistent with A.A.'s "description of what happened." Appellant argues Armstead's expert opinion was conclusory and speculative as a result of her failure to draw any causal connection between the healed hymenal transections and Appellant's alleged conduct. He contends Armstead's testimony A.A.'s SAFE examination was consistent with A.A.'s history recitation, her testimony A.A.'s injuries were consistent with A.A.'s description of the abuse, and her explanation of why she reached her conclusion, were not relevant to any issue in the case. Therefore, they were conclusory and speculative in the absence of an evidentiary link between the injury and Appellant's conduct. Appellant limits his complaints to specific testimony on page 150 of the record. In his reply brief, Appellant additionally complains

of Armstead's testimony on pages 153 and 154 of the record.[6]

Appellant concedes his defense counsel failed to object to this testimony on these bases, but argues we are bound by the Texas Supreme Court's holding in a civil case holding defense counsel is not required to object if an expert witness's opinion is conclusory or speculative. *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). However, the Court of Criminal Appeals has not applied the *Coastal* holding in any reported opinion. As conceded, defense counsel did not object at trial on these bases. As to Armstead's complained-of testimony on page 150 of the relevant portion of the record, Appellant's complaint on appeal does not comport with the only objection defense counsel lodged during this portion of the complained-of testimony—Armstead was volunteering information that had not been requested. *Clark*, 365 S.W.3d at 339. Appellant has failed to preserve this issue for our review. TEX.R.APP.P. 33.1.

At trial, Armstead explained after a female child reaches two years of age until puberty, her estrogen levels drop, and the elasticity of the hymen is reduced. Armstead testified, "[a]nd touching [the hymen]—there's no elasticity—it would hurt[,] and it tears [like tissue paper]." She explained "[i]f that skin is penetrated by an object larger than the vaginal opening, that skin will tear." Armstead also explained the female body is not prepared for nonconsensual penetration, and the abrasion of dry skin can tear and thin the hymen. After puberty, the hymen thickens and Armstead expected to find a thick and more elastic hymen, but instead, discovered A.A.'s hymen to be significantly thinner, "like it's been eroded or rubbed away[.]" Under cross-examination, Armstead testified A.A.'s injuries could only be attributed to penetration but admitted it was possible the injuries could have been caused by masturbation or sexual intercourse. As noted on

---

[6] In his reply brief, Appellant refers to this issue as "point of review 16." We note Rule 38.3 of the Texas Rules of Appellate Procedure restricts a reply brief to addressing matters raised in the Appellee's brief, and therefore, a reply brief may not be utilized to present a new issue to the Court.

State's Exhibit 6, Armstead testified her "impression" from the examination of A.A. was A.A.'s injuries were consistent with A.A.'s reported history of repeated sexual assault. After this testimony, the trial court overruled Appellant's objection, even as a qualified expert, Armstead could not offer her opinion as to an ultimate issue of fact. This evidence and testimony were relevant to show A.A. suffered physical injuries consistent with penetration. Armstead did not testify, or report Appellant was the cause of the penetration; she reported her impression the injuries were consistent with the history reported by A.A.

Assuming Appellant preserved error, we examine the purported error to determine whether the error was harmless. TEX.R.APP.P. 44.2(b). A.A. testified at trial, just as she disclosed to Armstead, Appellant placed his "thingy" and his finger in her female sexual organ on multiple occasions and it hurt. Armstead did not conclude in her report—nor did she directly testify—Appellant was responsible for the penetration that caused A.A.'s injuries. We conclude Armstead's testimony was neither conclusory nor speculative as Appellant argues on appeal. Even if the admission of the complained-of testimony had been erroneous, we conclude such error did not affect Appellant's substantial rights. Issue Fifteen is overruled.

**Issue Sixteen: Admission of Photographs**

In his sixteenth issue, Appellant complains of "egregious" error resulting from the admission of "several" photographs of A.A.'s genitals, which he claims had little or no probative value and were calculated to, and likely did, influence the jury in an irrational yet indelible way. Appellant again asserts the "egregious harm standard" for unpreserved jury charge error applies.

When the State offered the complained-of photographs—State's Exhibit 9—the trial court asked, "[i]s there an objection to the admission of Exhibit 9?" Defense counsel answered, "[n]o objection, Your Honor." Defense counsel did not object or refer to a pretrial motion to suppress

when the photographs were offered. Appellant has waived any error in their admission. *See Thomas v. State*, 408 S.W.3d 877, 885–86 (Tex.Crim.App. 2013)(holding that if a reviewing court is unable to discern from the record as a whole "whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the 'no objection' statement to be a waiver of the earlier-preserved error. . . . [T]he affirmative 'no objection' statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood"). Issue Sixteen is overruled.

**Issue Seventeen: Deprivation of Unanimous Verdict**

In his seventeenth issue, Appellant asserts he was deprived of his Sixth Amendment right to a unanimous verdict by the trial court's submission of a disjunctive application paragraph in its charge. The charge authorized the jury to find Appellant guilty of sexual abuse by having committed either the offense of indecency with a child by touching, or the offense of aggravated sexual assault by penetration of A.A.'s sexual organ by Appellant's sexual organ. Appellant contends the trial court violated "this rule" because it instructed the jury it was permitted to convict him if Appellant committed either act of sexual abuse included in the application paragraph of the charge. Without citation to the record or any authority, Appellant claims "[i]t may be that in a normal continuous sexual abuse case that non-unanimity is permitted," and argues the State chose to restrict its theory of prosecution to establishing Appellant should be found guilty only if he committed two or more acts of indecency or two or more acts of aggravated sexual assault of a child. Appellant argues, under this restricted theory, some jurors could have believed Appellant committed two or more acts of indecency with a child over a period greater than thirty days while others could have believed Appellant committed two or more acts of aggravated sexual assault of a child over a period greater than thirty days. The basis of Appellant's complaint resides in the

57

language of the submitted charge, which Appellant contends is egregious error.

### *Standard of Review & Applicable Law*

We review charge error under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). First, we must determine whether error exists; second, if error exists, we then evaluate whether the harm is harmless or warrants reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). The degree of harm required for reversal depends on whether the error was preserved at trial. *Almanza*, 686 S.W.2d at 171; *Neal v. State*, 256 S.W.3d 264, 278 (Tex.Crim.App. 2008). If error was preserved, we review for "some harm," whereas unpreserved errors are reversible only when the harm is egregious. *Almanza*, 686 S.W.2d at 171.

Section 21.02(d) of the Texas Penal Code expressly provides that members of a jury "are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX.PENAL CODE ANN. § 21.02(d). The statute only requires the jury agree "unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.* at § 21.02(d).

### *Analysis*

In the jury charge, the trial court set forth the law regarding the offense of continuous sexual abuse of a child, including definitions and elements, and directed the jury in part:

> You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the Defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the Defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.
>
> .      .      .
>
> Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that during a period that was 30 days or more in duration, to wit: from on or about June 1, 2014 through on or about November 20, 2015, when the Defendant was 17 years of age or older, the Defendant

58

committed two or more acts of sexual abuse against a child younger than 14 years of age, namely, indecency with a child by touching the genitals of A.A., a pseudonym, or by aggravated sexual assault by causing the penetration of the sexual organ of A.A., a pseudonym, by the sexual organ of Defendant, then you will find the Defendant guilty of continuous sexual abuse of a young child, as charged in the indictment.

If you do not so find, or if you have a reasonable doubt thereof, you will acquit the Defendant and find the defendant not guilty.

During the charge conference, defense counsel affirmatively stated, "Your honor, defendant does not object to the proposed charge, nor do we have any submissions." Therefore, in the presence of error, we will only reverse if we find egregious harm. *Almanza*, 686 S.W.2d at 171. Egregious harm determinations must be based on a finding of action rather than theoretical harm. *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex.Crim.App. 2011). Harm is egregious if it affected the very basis of the case, deprived Appellant of a valuable right, or vitally affected a defensive theory. *Id.* We assay the actual degree of harm in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the trial record as a whole. *Almanza*, 686 S.W.2d at 171.

Appellant correctly notes the Court of Criminal Appeals has instructed, "[w]hen the State charges different criminal acts, regardless of whether those acts constitute violation of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts." *Ngo*, 175 S.W.3d at 744. The court also observed, "[u]nder our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Id.* at 745. Unanimity in this context means each juror must agree the defendant committed the same, single, specific criminal act. *Id.*; *Holton v. State*, 487 S.W.3d 600, 606 (Tex.App.—El Paso 2015, no pet.). It is well-settled, however, a jury is only required to unanimously agree on each "element" of the

offense, not on the "manner and means" by which the defendant committed the offense. *See, e.g., Jefferson v. State*, 189 S.W.3d 305, 315 (Tex.Crim.App. 2006). In order to guarantee unanimity, "the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex.Crim.App. 2014)(*citing Pizzo v. State*, 235 S.W.3d 711, 714 (Tex.Crim.App. 2007)). However, when an indictment alleges differing methods of committing an offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991). Instructing the jury on alternate theories of committing the same offense, in contrast to instructing the jury on two separate offenses involving separate incidents, does not violate the unanimity requirement. *Saenz v. State*, 451 S.W.3d 388, 390 (Tex.Crim.App. 2014)(*citing Martinez v. State*, 129 S.W.3d 101, 103 (Tex.Crim.App. 2004)). Here, the key question is whether the specific acts of sexual abuse enumerated in the continuous sexual abuse statute are true elements of the offense, or whether they are merely the manner and means by which one of the elements is accomplished. If they are elements, jury unanimity is required; if they are manner and means, jury unanimity is not required. *Casey v. State*, 349 S.W.3d 825, 828 (Tex.App.—El Paso 2011, pet. ref'd).

Texas courts, which have addressed this issue, have concluded the acts of sexual abuse listed in the statute are not elements of the offense; the element of the offense upon which jury unanimity is required is "[t]he commission of two or more acts of sexual abuse over a specified time period—that is, the pattern of behavior or the series of acts[.]" *See McMillian v. State*, 388 S.W.3d 866, 872 (Tex.App.—Houston [14th Dist.] 2012, no pet.). The "series" itself is the key "element" of the offense upon which jury unanimity is required; the individual acts of sexual abuse enumerated in the statute are simply the "manner and means" by which the series is committed. Accordingly, while the jury must unanimously agree that the "series" of acts were committed

within the specified time frame, the jury is *not* required to unanimously agree on which specific acts the defendant committed. *See Jacobsen v. State*, 325 S.W.3d 733, 737 (Tex.App.—Austin 2010, no pet.); *see also Pollock v. State*, 405 S.W.3d 396, 405 (Tex.App.—Fort Worth 2013, no pet.); *Casey*, 349 S.W.3d at 829. The trial court did not err when it submitted a disjunctive charge to the jury. It properly instructed the jury that it was not required to agree unanimously on the specific act of sexual abuse or on the date those acts may have occurred and was correct in instructing the jury it was required to unanimously agree that Appellant, during a period that was thirty or more days in duration, committed two or more acts of sexual abuse as defined in the charge. *Kitchens*, 823 S.W.2d at 258. Therefore, the trial court's charge authorized the jury to find Appellant committed two or more acts of sexual abuse by committing indecency with a child or by committing aggravated sexual assault of a child. Issue Seventeen is overruled.

**Issue Eighteen: Credibility**

In his eighteenth issue, Appellant asserts the State's prosecutor committed "egregious" error during closing arguments because he allegedly vouched for and bolstered his own credibility, the law enforcement officers', Jansky's, Armstead's, and A.A.'s. Relying solely on federal circuit court precedent, Appellant urges us to adopt the "plain error analysis" utilized in federal courts for unpreserved jury argument error. We decline this request and continue to analyze alleged erroneous jury argument complaints within the existing framework of Texas jurisprudence.

*Applicable Law*

In Texas, "[t]he right to a trial untainted by improper jury argument is forfeitable" and is subject to the normal rules of error preservation. *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex.Crim.App. 2018)(*citing Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App 1996)). The trial judge "has no duty to enforce forfeitable rights unless requested to do so." *Marin v. State*, 851

61

S.W.2d 275, 279-80 (Tex.Crim.App. 1993). To preserve a complaint for appellate review, "the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion[.]" TEX.R.APP.P. 33.1(a)(1). "[T]o cure erroneous jury argument, the defendant must object and pursue his objection to an adverse ruling." *Hernandez*, 538 S.W.3d at 622. A defendant who fails to pursue his objection to an adverse ruling forfeits his right to complain on appeal. *Id.* "Even an inflammatory jury argument is forfeited if the defendant does not pursue his objection to an adverse ruling." *Id.* at 622–23 (*citing Estrada v. State*, 313 S.W.3d 274, 303 (Tex.Crim.App. 2010)(observing that even if a prosecutor's argument was so egregious that it could not be cured by an instruction to disregard, the defendant "should have moved for a mistrial to preserve this error").

We need not address the State's correct observation Appellant's issue is multifarious. Appellant did not object at trial to any of the arguments within this issue. Appellant has forfeited his right to complain about the prosecutor's alleged erroneous jury arguments. Issue Eighteen is overruled.

### Issues Nineteen and Twenty: Improper Jury Argument

In his nineteenth issue, Appellant complains "[e]gregious error resulted from the prosecutor's misstatement of the evidence in his closing argument and in his failure to make reasonable deductions from the evidence." Again, because Appellant failed to object at trial on this basis, we need not address the State's contention this issue is multifarious. In his twentieth issue, Appellant asserts egregious error occurred during closing argument when the prosecutor repeatedly referred to him as a "monster."

Appellant was required to object to the complained-of jury arguments in the trial court in order to preserve them for our review. TEX.R.APP.P 33.1; *Hernandez*, 538 S.W.3d at 622–23.

Appellant did not object to any argument he now complains of within these issues. Consequently, Appellant has forfeited his right to complain of the prosecutor's alleged erroneous jury arguments. Issues Nineteen and Twenty are overruled.

### Issue Twenty-One: Constitutional Challenge

In his twenty-first issue, Appellant asserts Texas Penal Code Section 21.02 is unconstitutional both on its face and as applied in this case because neither the indictment nor the court's charge required the jury to unanimously agree on the specific sexual offenses upon which they based their verdict, in violation of his Sixth Amendment right to a unanimous jury verdict.

A defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex.Crim.App. 2009). Appellant does not direct us to—nor are we aware of—any portion of the trial record that demonstrates Appellant challenged the constitutionality of Texas Penal Code Section 21.02 on its face. Even constitutional errors may be waived by failure to object at trial. *Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990), *overruled on other grounds by, Karenev*, 281 S.W.3d at 434. To preserve error, a defendant must make a specific, timely challenge to the constitutionality of a statute as applied to him. *Curry v. State*, 910 S.W.2d 490, 496 (Tex.Crim.App. 1995); *see also Holton v. State*, 487 S.W.3d 600, 606–07 (Tex.App.—El Paso 2015, no pet.)(examining the constitutionality of Section 21.02 and concluding Appellant was not deprived of his constitutional right to a unanimous verdict and upholding the constitutionality of that statute). Appellant failed to preserve his constitutional claims at trial. Issue Twenty-One is overruled.

### Issues Twenty-Two & Twenty-Three: Cumulative Effect

In his twenty-second issue, Appellant complains "the cumulative effect of the improper admission of all hearsay evidence[,]" which Appellant identifies as State's Exhibits 2, 3, 4, and 6,

as well as the complained-of hearsay statements the State adduced through the testimony of Sergeant Gonzalez, "was so harmful that [he] was deprived of any chance of a fair trial." Appellant quantifies the alleged inadmissible hearsay as constituting "more than half of all of the evidence in the case." This constitutes the entirety of Appellant's argument, and he cites neither to the record, nor to any authority, in support of his contentions.

We conclude this issue is inadequately briefed. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. TEX.R.APP.P. 38.1(i). This requirement is not satisfied by conclusory statements unsupported by legal citations. *See King v. State*, 17 S.W.3d 7, 23 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). Conclusory arguments which cite no authority present nothing for our review. *See Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App. 1992). Because Appellant has inadequately briefed this issue, he has waived error, if any. Issue Twenty-Two is overruled.

In his twenty-third issue, Appellant asserts "the cumulative effect of the errors identified in all [issues] . . . (i.e., [issues] 2 through 19) warrant vacating his conviction and granting him a new trial[.]" Appellant next cites, without discussion or application, two cases for the proposition that "it is possible for a number of errors to cumulatively rise to the point where they become harmful." *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex.Crim.App. 2009)(*citing Stahl v. State*, 749 S.W.2d 826, 832 (Tex.Crim.App. 1988)). This is the entirety of Appellant's argument.

Although Appellant has cited to legal authority, he has provided no analysis in support of his contention. We have no obligation to construct and compose issues, facts, and arguments for an appellant. *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex.Crim.App. 2017); *see also Linney v. State*, 413 S.W.3d 766, 767 (Tex.Crim.App. 2013)(Cochran, J., concurring in refusal to grant petition for discretionary review)("Failure to provide substantive legal analysis—'to apply the law to the

facts'—waives the point of error on appeal. If the appealing party fails to meet its burden of adequately discussing its points of error, this Court will not do so on its behalf.")[Internal citations omitted]. Issue Twenty-Three is overruled.

## CONCLUSION

For these reasons, we affirm.

September 27, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)